Filed 11/12/25  In re K.G. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FIVE

| | |
|---|---|
| In re K.G., a Person Coming Under the Juvenile Court Law. | B344229 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.B.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23LJJP00205B) |

APPEAL from orders of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Commissioner.  Affirmed in part, reversed in part and remanded with directions.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

Minor K.G.'s maternal grandmother K.B. appeals from the January 27, 2025 order denying her request to be appointed minor's de facto parent, and her petition under Welfare and Institutions Code section 388[1] to conduct a relative placement hearing under section 361.3 and change minor's placement from maternal great-aunt R.W.[2] to maternal grandmother. Because maternal grandmother had not assumed day-to-day responsibility for minor, we affirm the order denying maternal grandmother de facto parent status. Because the allegations of maternal grandmother's section 388 petition made a prima facie case showing both that circumstances had changed since the court's prior placement order and that consideration of maternal grandmother as a relative placement option was in minor's best interest, the juvenile court abused its discretion in denying maternal grandmother an evidentiary hearing. We therefore reverse the court's summary denial of K.G.'s section 388 petition, and remand with directions to hold an evidentiary hearing under section 388 and 361.3 to determine whether placing minor with maternal grandmother would be in minor's best interests.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] The record and briefs refer to R.W. as either maternal great-aunt or maternal grand-aunt, but the two terms are interchangeable. <https://www.legalgenealogist.com/2015/02/25/great-versus-grand> [as of Nov. 10, 2025], archived at https://perma.cc/N2NQ-S23K. We will use the term maternal great-aunt.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Record on Appeal

Because maternal grandmother is not a party to the underlying dependency case concerning minor, her access to the juvenile court case file is limited under California Rules of Court, rule 5.552(d).  Four days after filing her notice of appeal, maternal grandmother filed a "Petition for Access to Juvenile Case File" (JV-570) on February 24, 2025.  On March 27, 2025, more than a month later, the juvenile court issued an "Order after Judicial Review on Petition for Access to Juvenile Case File" (JV-574) granting maternal grandmother access to the clerk's transcript and to redacted portions of the reporter's transcript, on the condition that such records would only be used for the purpose of creating the record on appeal.  Although the order does not direct the clerk to exclude any records from the case file, the clerk's transcript does not contain any case records before January 27, 2025,[3] when maternal grandmother filed a de facto

---

[3] To the extent maternal grandmother may have filed a request for access to court records separate from the request associated with this appeal, we have only the Department's February 13, 2025 objection, but we do not have the request or the court's ruling.  An attachment to the Department's objection stated that maternal grandmother requested "copies of all records regarding placement or removal of the child from the [maternal grandmother's] care."  According to the Department's objection, maternal grandmother sought the records "to prepare for a 388 petition and possible trial."  The clerk's transcript does include a January 30, 2025 declaration in support of access to juvenile court records, filed by R.W., maternal great aunt—not

parent statement and request. The reporter's transcript is also very limited because the juvenile court only authorized an extensively redacted copy of the reporter's transcript for the hearing conducted on January 27, 2025.

On July 21, 2025, while the current appeal was pending, maternal great aunt filed a notice of appeal with numerous attachments.[4] In addition, maternal grandmother's notice of appeal also includes some orders that are not included in the clerk's transcript. While most of our summary of relevant facts and procedure is based solely on the limited record provided on appeal, to the extent we may consider documents or information connected to either maternal great-aunt's notice of appeal or maternal grandmother's notice of appeal, we will note that fact.

---

maternal grandmother—seeking access to the juvenile court's de facto parent order. From the limited record on appeal, it is unclear whether the Department's February 13, 2025 objection was filed in response to maternal great aunt's request (which we have in our record), or to maternal grandmother's request (which is not in our record, but is referenced in the objection).

[4] We take judicial notice of the July 21, 2025 filing, as well as the juvenile court's May 20, 2025 order granting the Department's section 388 petition to remove minor from maternal great aunt's custody. (Evid. Code, §§ 452, subd. (d)(1), 455, 459.) In doing so, we emphasize that we are not seeking to consider "postjudgment evidence that is outside the record on appeal and was never considered by the trial court," but rather to fill in gaps about the trial court's state of knowledge *at the time it made its appealed decision*. (*In re Zeth S.* (2003) 31 Cal.4th 396, 407.)

4

**B.    Background Information About Minor's Dependency Case**

According to a declaration filed by maternal grandmother, minor's mother has a long history of substance abuse, and when minor was born on July 15, 2024, he was removed from his mother's care, just like mother's older children. Minor's four older siblings had been under maternal grandmother's care for several years, and the Department planned to close those children's cases with legal guardianship "in the next couple of months." When the social worker called maternal grandmother to pick minor up from the hospital, maternal grandmother said she was on her way. But shortly afterwards, the social worker called again and told maternal grandmother not to come because the Department had some concerns and asked if there was any other family member who could pick minor up. Maternal grandmother assented, and asked her sister, maternal great-aunt R.W., to pick up minor. Maternal great-aunt picked up minor, and he had been living with her ever since.

Based on statements contained in a report filed by the Department in April 2025 and attached to maternal great-aunt's notice of appeal, it appears that on October 7, 2024, the day the juvenile court found minor to be a dependent child, it issued a no removal order, preventing minor's removal from maternal great-aunt's home absent further order by the court. After disagreement between the Department and maternal great-aunt about whether she was required to obtain resource family approval (RFA), the Department filed a walk-on request under section 388 on December 20, 2024, asking the court to lift its no removal order in 30 days if maternal great-aunt continued to

5

refuse to participate in the RFA process.[5]  The court continued the Department's walk-on request to January 27, 2025, and on that date, the court ordered maternal great-aunt to re-submit her RFA application by the next hearing, or the court would lift the do-not-remove order.  The court's January 27, 2025 order is also evidenced by a minute order attached to maternal grandmother's notice of appeal.  The minute order stated that maternal great-aunt "is present and is ordered to re-submit the RFA application by the next date or the Court will lift the do-not-remove order," and ordered the Department to prepare a last minute information report to address the RFA application.  On the next scheduled court date, February 4, 2025, the court vacated the do-not-remove order, over the objection of minor's counsel.

## C.  Maternal Grandmother's Request for De Facto Parent Status

On January 27, 2025, maternal grandmother filed a De Facto Parent Request (form JV-295) and a De Facto Parent Statement (JV-296), together with a declaration and a memorandum of points and authorities.  In her statement, maternal grandmother acknowledged that she "has not cared for [minor], as he has been placed with the maternal grandaunt since birth, however, she is willing and able to provide the child with a permanent home."  Maternal grandmother stated that she was applying to become minor's de facto parent, but also acknowledged that maternal great-aunt had been granted de

---

[5] The RFA program is administered at the county level, as described in Welfare & Institutions Code section 16519.5.

6

facto parent status. Maternal grandmother stated that she and her sister could work together to meet minor's needs and her only intent in applying for de facto parent status was minor's best interests.

The memorandum of points and authorities acknowledged that maternal grandmother had not cared for minor since his placement, but argued that she had visited regularly and stayed informed of minor's medical appointments and developments. She had assumed a parental role and provided day-to-day care for his older siblings, and was ready to provide the same for minor if he were placed with her.

The juvenile court denied maternal grandmother's request to be appointed de facto parent. Most of the reporter's transcript of the hearing on January 27, 2025 is redacted, but the unredacted portions indicate that maternal grandmother was present but was not a party.

According to the minute orders attached to maternal grandmother's notice of appeal, the juvenile court held two hearings on January 27, 2025: a motion hearing and a non-appearance progress report hearing. Maternal grandmother, maternal great-aunt, and their respective attorneys appeared at both hearings. At the motion hearing, the court denied the de facto parent requests of both maternal grandmother and maternal great-aunt. At the progress report hearing, the court stated it had read and considered the Department's report—presumably the section 388 walk-on report attached to maternal great-aunt's notice of appeal—and ordered the Department to prepare a last minute information report to address the RFA application. The next scheduled court date was February 4, 2025.

**D.      Maternal Grandmother's Section 388 Petition**

On February 6, 2025, maternal grandmother filed a request to change court order under section 388, seeking to change minor's placement.  Maternal grandmother's section 388 petition asked the court to change its July 2024 order that placed minor with maternal great-aunt, and instead order maternal grandmother to be assessed for placement under section 361.3 and to place minor with her.  Maternal grandmother alleged circumstances had changed because her home was recently reassessed by RFA and granted approval for continued placement of the four grandchildren, plus one additional child.  Maternal grandmother argued the requested change would be in minor's best interest because he would benefit from growing up with his siblings; she was caring for minor's older siblings, and the siblings spending each day together growing a sibling bond would improve their emotional, mental, and psychological well-being.  In her supporting declaration, she provided information about each of the siblings under her care, and stated she had met all the requirements for relative placement including RFA requirements, and was ready and able to provide minor with the same level of care she provided to his siblings.  Maternal grandmother argued that dependency law required the Department to assess maternal grandmother under the criteria set forth in section 361.3, and that after such an assessment was conducted, the court should hold a hearing.

One day later, the juvenile court denied maternal grandmother's section 388 petition without a hearing, stating as

8

its reason for the denial that the request was not in minor's best interest "as previously stated on the record at prior hearing."

## E. Maternal Grandmother's Appeal

On February 20, 2025, maternal grandmother filed a notice of appeal, appealing from all findings and orders made by the court on January 27, 2025, including but not limited to her request for de facto parent status, and the February 6, 2025 denial of her section 388 petition without a hearing.

## DISCUSSION

## A. Maternal Grandmother's Request to be Recognized as a De Facto Parent

### 1. *Relevant law*

"De facto parent status is 'a judicially created and maintained concept' [citation] which is not incorporated into the statutory dependency scheme but is recognized in court rules (Cal. Rules of Court, rules 5.502(10) (defining de facto parent), 5.530(a) (right to be present at court proceedings), 5.534(e) (standing to participate and procedural rights))." (*In re A.F.* (2014) 227 Cal.App.4th 692, 699 (*A.F.*).) The de facto parent doctrine "recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding." (*In re Kieshia E.* (1993) 6

Cal.4th 68, 70–71, 77 (*Kieshia E.*).)  De facto parent status does not guarantee that the child will be placed or will remain in that de facto parent's custody.  (*A.F.*, at p. 700; *In re Abigail L.* (2022) 75 Cal.App.5th 169, 177–178 (*Abigail L.*); *In re B.S.* (2021) 65 Cal.App.5th 888, 897 (*B.S.*).)  Instead, de facto parent status merely secures the right to (1) present relevant information to the juvenile court, so that " ' "all legitimate views, evidence, and interests are considered" . . . . ' " in making placement decisions regarding the child (*A.F.*, at p. 701), and (2) have a proverbial seat at the table, so that the de facto parent can assert their "own interest in the companionship, care, custody and management of the child" and offer the court an alternative placement option (*In re B.G.* (1974) 11 Cal.3d 679, 693 (*B.G.*); *Kieshia E., supra*, 6 Cal.4th at pp. 77–78.).  These limited rights dovetail with the "key reason" why the courts invented the concept of a de facto parent in the first place:  De facto parents, by virtue of their close relationship with the child, "may provide critical information that assists the [juvenile] court in determining what disposition is best for the child."  (*A.F.*, at p. 701; *B.G.*, at p. 693.)

A de facto parent is a " 'a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, . . .  and who has assumed that role for a substantial period.' " (*In re A.F., supra*, 227 Cal.App.4th at p. 699, quoting Cal. Rules of Court, rule 5.502(10).)  Factors relevant to deciding whether a person falls within the definition of a de facto parent include "whether (1) the child is 'psychologically bonded' to the adult; (2) the adult has assumed the role of a parent on a day-to day basis for a substantial period of time; (3) the adult possesses information about the child unique from the other participants in the process; (4) the adult has regularly attended juvenile court

10

hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact with the adult." (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 66–67, fn. omitted (*Patricia L.*); *Abigail L., supra,* 75 Cal.App.5th at p. 177.) De facto parent status is liberally granted "[b]ecause a court can only benefit from having all relevant information." (*Patricia L.,* at p. 67; see also *Abigail L.,* at p. 177.)

"A person requesting de facto parent status has the burden to show by a preponderance of the evidence he or she qualifies for that status. [Citation.] We review a juvenile court's decision denying a request for de facto parent status for an abuse of discretion. [Citations.]" (*Abigail L., supra,* 75 Cal.App.5th at p. 178.)

### 2. *Analysis*

Maternal grandmother acknowledged in her request for de facto parent status that she had never been responsible for minor's day to day care. Nonetheless, she contends that the court's order should be reversed because the remaining factors for determining de facto parent status weighed in her favor, based on her care for minor's older siblings. Maternal grandmother's bond with minor's older siblings is simply not pertinent to whether she met the factors for being minor's de facto parent. In light of the role of a de facto parent in providing information to the court based on the applicant's relationship with that particular child, maternal grandmother has not shown that the juvenile court abused its discretion when it denied her request for de facto parent status.

11

## B.  Maternal Grandmother's Section 388 Petition

Maternal grandmother contends that because her section 388 petition stated a prima facie case of changed circumstances and that the requested relief would be in minor's best interests, the juvenile court abused its discretion when it denied her request without a hearing.  She further contends that by denying her a hearing on the question of relative placement, the court failed to meet its obligations under section 361.3.

### 1.  *Relevant law – section 388 request to change court orders*

"Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ."  (§ 388, subd. (a)  'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.'  [Citation.]"  (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.)  A relative who seeks to modify a disposition order with respect to the child's placement has standing to appeal from the denial of a section 388 petition.  (See *In re R.T.* (2015) 232 Cal.App.4th 1284, 1293–1294, 1299–1300 [reviewing denial of § 388 petition brought by aunt and uncle seeking to modify placement in disposition order on the grounds that they were denied preferential consideration for placement].)

A petition under section 388 must be liberally construed in favor of its sufficiency.  (Cal. Rules of Court, rule 5.570(a).)

Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414; see Cal. Rules of Court, rule 5.570(d).) A prima facie showing is not made "unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.) "In determining whether a parent has made a prima facie showing under section 388, we may consider the entire factual and procedural history of the case." (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 711.)

We review the summary denial of a section 388 petition for an abuse of discretion. (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 7; *In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

2.  *Relevant law – section 361.3 relative placement request*

"The California Legislature has expressed a strong preference to place children who have been detained from their parents with family members whenever possible. To that end, there is a detailed statutory scheme setting forth the duties of the [Department] and the juvenile court, including requiring [the Department] to promptly, and diligently assess any interested

13

family members for placement when a child is removed from parental custody." (*In re N.J.* (2024) 104 Cal.App.5th 96, 102–103.) "Section 361.3 gives 'preferential consideration' to a request by a relative of a child who has been removed from parental custody for placement of that child. . . . The preference applies at the disposition hearing and thereafter 'whenever a new placement of the child must be made.' [Citations.]" (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1302–1303.) "If a family member requests placement, the statutory placement preference under . . . section 361.3 requires [the Department] and the court to place the relative at the head of the line for placement and to place the child with the relative if practicable." (*In re N.J., supra*, 104 Cal.App.5th at p. 103.) A relative is defined as "an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words 'great,' 'great-great,' or 'grand,' or the spouse of any of these persons . . . ." (§ 361.3, subd. (c)(2).)

By requiring relatives to be considered for placement, section 361.3 does not "guarantee that the child will be placed with any person so identified." (§ 361.3, subd. (a)(8)(B); see also *County of Los Angeles v. Superior Court* (2024) 107 Cal.App.5th 160, 180. Nonetheless, any relative requesting placement "shall be assessed according to the factors" listed in subdivision (a) of section 361.3, and the factors include "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs," "(4) Placement of siblings and half siblings in the same home, unless that placement is found to be contrary to the safety and well-being of any of the siblings . . . [¶] (5) The good moral character of the relative and any other adult

living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful," among others. (§ 361.3, subd. (a)(1) – (8).)

### 3. *Relevant law - minor's best interests under sections 361.3 and 388*

"[A] relative seeking placement of the child is entitled to file a petition under section 388 to trigger a relative placement assessment and/or request a hearing under section 361.3. However, in determining whether the child should be placed with the relative, the juvenile court should not substitute the generalized best interest showing required under section 388 for its independent assessment of the relevant statutory criteria under section 361.3. [Citation.]" (*Isabella G.* (2016) 246 Cal.App.4th 722, fn. 11.) In other words, when a juvenile court considers the question of a child's placement after disposition, in the context of a contested section 388 evidentiary hearing, section 361.3 does not create a presumption, but requires the Department to assess relatives for placement and the court to consider all of the section 361.3 factors, including whether such placement would be in the child's best interests. (*In re Stephanie M., supra*, 7 Cal.4th at p. 321 ["the court is not to presume that a child should be placed with a relative, but is to determine whether such a placement is *appropriate*, taking into account the suitability of the relative's home and the best interest of the

child"]; *In re Isabella G., supra,* 246 Cal.App.4th at pp. 719–723 [agency required to assess relative under section 361.3, subdivision (a) and court required to exercise its independent judgment]; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033–1035 [same]); *Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862–863 ["The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor"].)

4. *Analysis*

The court erred in denying maternal grandmother's section 388 petition without an evidentiary hearing to permit both maternal grandmother and the Department to present their competing evidence on whether it was in minor's best interests for minor to be placed with maternal grandmother and his half-siblings.

First, we disagree with the Department's assertion that the change in maternal grandmother's RFA status was an immaterial change in circumstances. Although the truncated nature of the appellate record prevents us from discerning the juvenile court's rationale for initially ordering minor placed with maternal great-aunt at disposition in July 2024, we can reasonably infer that RFA approval was at least one of the impediments to placing minor with maternal grandmother when he was initially detained from parental custody and placed with maternal great-aunt. Obtaining RFA approval for another child in the home would therefore qualify as a change of circumstance necessary for relief under section 388.

16

Next, maternal grandmother alleges placing minor with her—or at the very least conducting a section 361.3 hearing on relative placement—is in minor's best interests because he would have the benefit of growing up in the same home as his older half-siblings. On appeal, the Department argues that the court was already aware of the siblings' circumstances and maternal grandmother's home environment when it decided against placing minor in her care, and so this court should uphold the juvenile court's determination that changing its order would not be in minor's best interests. The Department argues that the court reasonably favored minor's interest in the stability of his ongoing placement with maternal great-aunt over his interest in fostering sibling relationships. However, documents attached to maternal great-aunt's notice of appeal place the Department's argument in doubt.[6] Specifically, by February 4, 2025, the Department had informed the court of maternal great-aunt's failure to participate in the RFA process, and the juvenile court had lifted its earlier order preventing minor from being removed from maternal great-aunt's home.

Maternal grandmother filed her section 388 petition just two days later, on February 6, 2025, and the only evidence we

---

[6] Because we may consider the entire factual and procedural history of the case in determining whether a section 388 petition makes the required showing (*In re K.L.* (2016) 248 Cal.App.4th 52, 62), the interests of justice warrant our choice to take judicial notice of documents that shed light on the contemporaneous information available to the court at the time of its decision, particularly where the juvenile court limited maternal grandmother's access to the juvenile case file, potentially hampering her ability to demonstrate error.

17

have of the court's reason for its summary denial of maternal grandmother's section 388 petition is a handwritten statement that the request was denied because it was "not in child's best interests as previously stated on the record at prior hearing." However, the redacted reporter's transcript for the January 27, 2025 hearing sheds no light on any reasoning the court may have engaged in at that hearing. Other than a portion where the court states it has denied the request for de facto parent status, which we presume to be referring to maternal grandmother's request, no other reasoning is evident from the reporter's transcript.

Maternal grandmother alleged it would be in minor's best interests for the court to conduct a section 361.3 hearing and place minor with her because minor and his siblings would all benefit from "spending each day together growing a sibling bond which will improve their emotional, mental and psychological well-being" and that minor "will benefit from growing with his siblings." The importance of the sibling bond is recognized as one of several factors in determining relative placement. (§ 361.3, subd. (a)(4).) The preservation of sibling relationships is relevant to determining a child's best interests in other parts of the dependency statutory scheme as well. (See, e.g., *In re L.M.* (2019) 39 Cal.App.5th 898, 911 [the ability of a family seeking a child's placement to provide that child "a sibling relationship in a loving home directly bears on whether [the child's] best interests are furthered by removal"]; *In re Isaiah S.* (2016) 5 Cal.App.5th 428, 437 [discussing sibling relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(B)(v)]; *In re Erik P.* (2002) 104 Cal.App.4th 395, 404 [in enacting the sibling-relationship exception "the legislature was concerned with preserving long-standing relationships between siblings which

18

serve as anchors for dependent children whose lives are in turmoil"].)

Against this legal backdrop of the role of maintaining sibling ties in the dependency context, and the factual backdrop of minor's placement with maternal great-aunt being at some risk based on her refusal to participate in the RFA process, it was an abuse of discretion for the juvenile court to determine that maternal grandmother's section 388 petition did not allege sufficient facts to clear the low threshold of a prima facie case that the requested relief was in minor's best interests. We reverse the order summarily denying the section 388 petition and remand for an evidentiary hearing.

5. *Remand*

We acknowledge the challenge associated with remanding this matter to conduct a hearing on a petition filed more than nine months ago, and we recognize that events that have taken place since maternal grandmother filed her appeal will factor into the court's analysis. We emphasize that the focus of the hearing on remand is what placement is in minor's best interest *at the time of the hearing on remand*. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1291 [looking to "the circumstances existing at the time of the hearing"]; *In re Thomas R.* (2006) 145 Cal.App.4th 726, 734 [same].) We need not decide whether the hearing on remand is technically categorized as a "relative placement" hearing under section 361.3, or a hearing under section 388. That is because both inquiries will address whether changing minor's placement to maternal grandmother's home, with his half-siblings, is in minor's best interests.

19

## DISPOSITION

The juvenile court's January 27, 2025 order denying maternal grandmother K.B.'s request to be appointed de facto parent is affirmed.  The court's February 6, 2025 order summarily denying maternal grandmother's petition under Welfare and Institutions Code section 388 is reversed, and the case is remanded with directions to conduct an evidentiary hearing on the section 388 petition.

NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


BAKER, J.

20